IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RUDY RICE                                      *

    Plaintiff,                              *

v.                                             *     CIVIL NO.: ADC-16-3498

HOWARD COUNTY GOVERNMENT                       *

    Defendant.                             *

 *  *  *  *  *  *  *  *  *  *  *  *  *

**MEMORANDUM OPINION**

**Introduction**

The Plaintiff filed a Complaint alleging that he suffered race discrimination, retaliation, and wrongful termination in his employment with Howard County Government. Plaintiff alleged that he was subjected to a hostile work environment based upon several comments from co-workers and the actions of his supervisors. He also alleged that he was fired in retaliation for engaging in the protected activity of filing his discrimination complaint.

**Facts**

**The Offending Conduct**

Plaintiff began his employment with Howard County Government on July 1, 2013. *Complaint at 3*. Plaintiff was hired as a support technician III and was responsible for processing payroll for employees at the Little Patuxent Water Reclamation Plant ("LPWRP"). *Id.* The first indication of any problems for Plaintiff occurred on March 10, 2014 when Denise Junis, a co-worker remarked that "black people don't look good in camouflage" referring to a baseball cap Plaintiff was wearing at the time. *Id.* A week later, Ms. Junis remarked to Plaintiff, "what the

hell, black people don't celebrate St. Patrick's Day". *Complaint at 4*. Sometime in April, 2014, Ms. Junis came into Plaintiff's office and said, "Rudy, since the power is out, I cannot see you. You are too black…" and bellowed in laughter. *Id.* Plaintiff alleged Ms. Junis was never disciplined for any of this behavior. *Id.*

Plaintiff also alleged he was subjected to racial discrimination by another county employee, Paul Tomaskovic. *Id.* Plaintiff alleged that on May 20, 2014, Tomaskovic advised Plaintiff "Rudy, I swear to f****** God, if you have that heater on, I am going to kick your black ass." Tomaskovic repeated the statement to Plaintiff for a second time and Plaintiff alleged he was fearful that Tomaskovic would escalate the incident to a physical altercation. *Id.*

**Action Taken by Plaintiff**

Plaintiff reported the Tomaskovic incident to his supervisor, Maria Madison. *Id.* Although the complaint does not specifically list the date it is inferred that it was on May 20, 2014, following the statements. Ms. Madison reported the incident to her supervisor, Mr. Gerwin who notified Human Resources of a potential serious harassment issue at LPWRP. *Complaint at 5.* Following the incident, Madison advised Plaintiff not to report to LPWRP and advised Plaintiff that the matter had been reported to Human Resources. *Id.*

Plaintiff met with Gerwin on May 22, 2014 and expressed his concern that he would be retaliated against for making the complaint against Tomaskovic. *Id.* Gerwin assured Plaintiff that there would be no retaliation. *Id.* On May 25, 2014, Plaintiff submitted his statement to Human Resources after it was reviewed by Madison and Gerwin. *Complaint at 6.* Plaintiff alleged he felt pressured by Madison and Gerwin because they asked to review the statement before it was submitted. *Id.* Plaintiff does not allege they changed or altered the statement in any way to his

2

detriment. Plaintiff alleged Gerwin was trying to intimidate him into dropping the complaint after Gerwin told him that he (Gerwin) thought Tomaskovic was just trying to be funny. *Id.* Plaintiff met with Dr. Gray from Human Resources who advised him that Plaintiff would not return to LPWRP but would go to the Old Montgomery Road location to assume his job responsibilities. *Complaint at 7.* That information was confirmed in a meeting with Dr. Gray and Plaintiff. *Id.*

Plaintiff alleged that the harassment continued because he was not assigned a desk or computer when he was transferred and all of his belongings were still at LPWRP. *Id.* Plaintiff did not allege how long this situation continued but alleged that all of his files and computer were transferred to the Old Montgomery Road location. *Id.* Plaintiff was asked to meet with Tomaskovic on several occasions to accept an apology. *Complaint at 8.* Plaintiff had several meetings with Madison and Gerwin between July 18, 2014 and August 20, 2014 and was informed he was being returned to LPWRP and that his office equipment would be relocated as well. *Complaint at 9.* Plaintiff met with other officials who advised him he would not have to return to LPWRP. *Complaint at 10.*

On November 4, 2014, Gerwin, Madison and others met with Plaintiff and Plaintiff was advised he would be returning the following day to LPWRP or be terminated. *Complaint at 10-11.* Plaintiff reiterated his concerns for his safety and did not return to work at LPWRP and on November 13, 2014, received a letter of termination from Jim Irwin, Director of Public Works. *Complaint at 11.*

## Discussion

### Standard of Review

Under Federal Rule of Procedure 12(c) a party may move for judgment on the pleadings any time after the pleadings are closed, as long as it is early enough not to delay trial. Fed. R. Civ. P. 12(c). The legal standard governing a 12(c) motion is the same as a motion made under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must not be dismissed if it alleges enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In testifying the sufficiency of a civil rights complaint, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged". *Edwards* at 243, *citing, Harrison v. United States Postal Serv.,* 840 F.2d 1149, 1152 (4th Cir. 1988). An employment discrimination plaintiff need not plead a prima facie case of discrimination. *Swierkiewicz v. Sorma N.A.,* 534 U.S. 506, 515 (2002).

### The Hostile Environment Claim

As stated above, the Court must inquire whether Plaintiff has pled sufficient facts that would entitle him to relief under a plausible theory of recovery. In this case, the Court is called upon to determine whether the Plaintiff has pled facts that show (1) that he filed his complaint timely (2) the conduct alleged was race based (3) the conduct was severe and pervasive enough to constitute a hostile environment (4) he suffered an adverse employment action.

At its basic level, the Plaintiff's complaint alleges two co-workers made a total of five race-based comments from March 10, 2014 through May 20, 2014. The Plaintiff alleges that not only were the comments by Tomaskovic race-based but also threatening physically. There is no

evidence in the record that Plaintiff initially complained about the March comments by Junis until after the May comments by Tomaskovic. Subsequent to the May comments, Defendants took remedial action by moving Plaintiff, and it appears at some later date, disciplining Tomaskovic, although the record is scant as to what that discipline entailed. Markedly though, Plaintiff does not allege that the discipline to Tomaskovic was inappropriate or inadequate. Plaintiff does allege however that he felt pressured by Gerwin to drop the complaint after Gerwin repeatedly told him Tomaskovic was just trying to be funny.

Plaintiff also alleges conduct on the part of his supervisors that continued up to his termination. That conduct included not providing Plaintiff with his work computer and equipment, requesting additional duties outside of his position, insistent meetings with the supervisors, pressuring Plaintiff to meet with Tomaskovic, to drop his complaint and to return to his original worksite.

In *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116-17 (2002), the Supreme Court held that a hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' and the Supreme Court has held that such claims are subject to a continuing violation theory. *Morgan* at 116-17. The Court looks to all the circumstances and, provided that an act contributing to the claim occurs within the filing period, the entire period of the hostile environment claim may be considered to determine liability. *Id.* The Court later clarified the holding in Morgan to be that a hostile-environment claim "includes every act composing that claim, whether those acts are independently actionable or not." *Green v. Brennan,* 136 S.Ct. 1769, 1778 (2016). It pointed out that "even if a claim of discrimination based on a single discriminatory act is time barred, that same act could still be used as part of the basis for a hostile-work-environment claim, so long as one other act that was

part of that same hostile-work-environment claim occurred within the limitations period." *Id.* at 1781 n. 7, (citing *Morgan*, at 117).

To address the issue of timeliness of his claim, "…adverse actions, including changing of duties, work assignments, termination and constructive discharge, within the statutory period may be considered as acts contributing to the hostile work environment and make the claim timely under the continuing violation theory." *Guessous v. Fairview Prop. Investments, LLC.*, 828 F.3d 208, 222-223 (4th Cir. 2016). Plaintiff has met his burden since the acts alleged with respect to his supervisors are made within the statutory period, and certainly are attributable to the conduct alleged in March through May, 2014.

Title VII renders it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). An employer contravenes § 2000e–2(a)(1) by, inter alia, requiring an African–American employee to work in a racially hostile environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted). Thus, to prevail on a Title VII claim that a workplace is racially hostile, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir.2011).

There is no question in this Court's mind that the comments made to Plaintiff as alleged could be perceived as unwelcome and race-based. It is also of no moment what was intended by Junis or Tomaskovic in making those comments. Turning to the third element, the question then becomes in the light most favorable to the Plaintiff has he alleged conduct consisting of those comments and the actions of Plaintiff's supervisors that were sufficiently severe and pervasive to entitle Plaintiff to relief. Element three of a hostile work environment claim requires a showing that "the environment would reasonably be perceived, and is perceived, as hostile or abusive"; the plaintiff may, but is not required to, establish that the environment is "psychologically injurious." *See, Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22 (1993). Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). That determination is made "by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23. It "is not, and by its nature cannot be, a mathematically precise test." *Id.* at 22.

Plaintiff relies upon the five comments made over about a two month period, along with the response by Plaintiff's supervisors in first moving him, pressuring him to meet with the harassing and alleged threatening employee, drop his complaint or at least convince Plaintiff that it was just an employee trying to be funny, and then ordering him back to his worksite where he alleged he felt physically threatened. In a recent decision, the Court found that a single incident or pair of discrete instances were severe enough to engender a hostile work environment. *Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 222, 280 (4th Cir. 2016). The Court went on to reject

the notion that any prior decisions were meant to require more than a single incident of harassment in every hostile work environment case. *Liberto* at 281. The test is whether a reasonable jury could find that the conduct was severe enough to engender a hostile work environment. *Id.* Based upon Plaintiff's allegation in the complaint, Plaintiff has met his burden – by alleging facts that a reasonable jury could find were severe enough to engender a hostile work environment. The comments were raced based and in the case of Tomaskovic, alleged to threaten physical harm. Plaintiff alleges conduct by his supervisors that a jury could find failed to remedy the hostile environment and ultimately returned Plaintiff right back into it.

### The Wrongful Termination Claim

To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove "(1) that she engaged in a protected activity," as well as "(2) that her employer took an adverse employment action against her," and "(3) that there was a causal link between the two events." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir.2005). There is no question that Plaintiff engaged in protected activity by filing his complaint. Plaintiff has alleged he was terminated, or constructively discharged and that it was because of his complaint. Defendants argue that Defendant is not eligible for relief because he failed to report to his workplace. *Reply* at 6. Plaintiff alleges that he feared for his safety and after being told by Dr. Gray at Human Resources he would never be returned to his original workplace, he was ordered to return there.

As stated above, in testing the sufficiency of a civil pleading concerning civil rights violations, "we must be especially solicitous of the wrongs alleged" and "must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged". *Edwards, supra.* In

the present case, Plaintiff has met his burden and alleged sufficient facts that would entitle him to relief with respect to his retaliation claim resulting in wrongful termination. Title VII must be read "to provide broader protection for victims of retaliation than for [even] victims of race-based, ethnic-based, religion-based, or gender-based discrimination," because "effective enforcement could ... only be expected if employees felt free to approach officials with their grievances." *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 66-67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

### Conclusion

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings (ECF 28) will be DENIED. A separate Order will issue.

_31 July 2017_
Date

A. David Copperthite
United States Magistrate Judge